IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| J.G., by and through her next friend, SABRINA ROBINSON 17525 Madison Avenue, Apt. 101 Lakewood, Ohio 44117, and D.J., by and through his next friend, SABRINA ROBINSON 17525 Madison Avenue, Apt. 101 Lakewood, Ohio 44117 Plaintiffs, vs. OFFICER KEVIN JONES (in his individual capacity) c/o Lakewood Police Department 12650 Detroit Road Lakewood, Ohio 44107, OFFICER GARY CRUMLEY (in his official and individual capacities) c/o Lakewood Police Department 12650 Detroit Road Lakewood, Ohio 44107, OFFICER KEVIN KOHUTH (in his official and individual capacities) c/o Lakewood Police Department 12650 Detroit Road Lakewood, Ohio 44107, OFFICER NICHOLAS REBRACA, JR. (in his official and individual capacities) c/o Lakewood Police Department 12650 Detroit Road Lakewood, Ohio 44107, | Case No. Judge Magistrate Judge |

| | |
|---|---|
| OFFICER DARREN SMYKOWSKI (in his official and individual capacities) c/o Lakewood Police Department 12650 Detroit Road Lakewood, Ohio 44107, <br><br>THE CITY OF LAKEWOOD 12650 Detroit Road Lakewood, Ohio 44107, <br><br>   and <br><br>LAKEWOOD PUBLIC LIBRARY 15425 Detroit Avenue Lakewood, Ohio 44107 <br><br>             Defendants. | |
| **COMPLAINT WITH JURY DEMAND** | |

### NATURE OF ACTION

1.      This is a civil-rights action brought under 42 U.S.C. § 1983 and Ohio state law. On November 7, 2016, two children—Plaintiff J.G. and her brother, Plaintiff D.J.—were sitting quietly together at the Lakewood Public Library's Madison branch when Lakewood Police Officer Kevin Jones unreasonably seized and used excessive force against J.G., breaking her jaw and causing her other physical and emotional injuries. Other Lakewood officers who responded after Officer Jones attacked J.G. failed to render aid by securing prompt medical treatment as J.G. bled on the Library steps. Lakewood police officers stood around joking about clocking out early while J.G. cried in pain and her 11-year-old brother stood powerless to help her. Defendants Lakewood Public Library and the City of Lakewood have both adopted customs, policies, or practices that (1) fail to train employees on how to deal with a foreseeable population

of individuals: children and (2) fail to train employees on how to properly respond to serious medical needs.

## PARTIES

2. Plaintiff J.G. is a 17-year-old high-school student who resides in Lakewood, Ohio with her mother and next friend, Sabrina Robinson.

3. Plaintiff D.J. is J.G.'s younger brother. He is 12-years old and likewise resides in Lakewood, Ohio with his mother and next friend, Sabrina Robinson.

4. Defendant Kevin Jones is a Lakewood police officer. At all relevant times, he was in uniform, and acting under color of state law and in his capacity as a Lakewood Police Officer. He works in Lakewood, Ohio and remains an active member of the Lakewood Police Department.

5. Defendant Gary Crumley is a Lakewood police officer works in Lakewood, Ohio. At all relevant times, he was in uniform, and acting under color of state law and in his capacity as a Lakewood Police Officer.

6. Defendant Kevin Kohuth is a Lakewood police officer works in Lakewood, Ohio. At all relevant times, he was in uniform, and acting under color of state law and in his capacity as a Lakewood Police Officer.

7. Defendant Nicholas Rebraca is a Lakewood police officer works in Lakewood, Ohio. At all relevant times, he was in uniform, and acting under color of state law and in his capacity as a Lakewood Police Officer.

8. Defendant Darren Smykowski is a Lakewood police officer works in Lakewood, Ohio. At all relevant times, he was in uniform, and acting under color of state law and in his capacity as a Lakewood Police Officer.

9. Defendant Lakewood Public Library is a public-library system organized under Ohio Rev. Code § 3375, and a "person" subject to suit within the meaning of 42 U.S.C. § 1983.

10. Defendant City of Lakewood is a municipal corporation under the Ohio Constitution Art. XVIII and a "person" subject to suit within the meaning of 42 U.S.C. § 1983. It is vested with the supervision of the Lakewood Police Department.

## JURISDICTION AND VENUE

11. Under 28 U.S.C. §§ 1331 and 1343, Plaintiffs assert jurisdiction over federal claims under 42 U.S.C. §§ 1983 and 1988, which provides for attorney and expert fees for vindication of civil-rights claims.

12. This Court has personal jurisdiction over the Defendants and venue is proper in this Court under 28 U.S.C. § 1391 because the events giving rise to Plaintiffs' claims took place within the Court's jurisdiction.

## FACTUAL BACKGROUND

### J.G. and D.J. visit the Lakewood Madison Library after school.

13. On November 7, 2016, Sabrina Robinson dropped off her children, J.G. and D.J., at Lakewood's Madison Library.

14. J.G. and D.J. were regulars at the library, having spent most of their childhood visiting often and getting to know its librarians. On that day, D.J. planned to connect to the library's WiFi and to stream TV shows on his laptop, while J.G. planned to use the Internet to chat with her friends on her phone.

15. With J.G. leading and D.J. following, the two of them entered the Library and walked into the children's room on the east side of the building. Officer Kevin Jones, who was engaged in secondary employment at the branch, stood in his Lakewood police uniform at the entrance of the children's room and watched J.G. and D.J. walk past.

16.     J.G. and D.J. sat down and began to play on their devices. J.G. was listening to music on her headphones. Officer Jones approached J.G. and asked her to turn down her music. J.G. complied. Unsatisfied, Officer Jones again asked her to turn down her music. J.G. again did as she was told and turned down her music to an even lower level. Minutes later when J.G.'s phone began to ring, Officer Jones told her to "shut the fuck up." J.G. apologized and said it was a mistake. J.G. turned off her music and sat with her brother watching his screen.

17.     Officer Jones continued to stare at J.G. and D.J. The officer's constant vigilance made them uncomfortable, especially given the hostile manner in which he had treated them since they arrived. So, after 15 minutes in the children's room, J.G. got up and walked to the western side of the library to the adult section. D.J. followed shortly after.

18.     Having moved to the adult section, D.J. restarted his videos as J.G. looked on. For nearly 20 minutes, the two of them sat quietly together, in a half-circle of chairs, occasionally resting their heads on each other. J.G. casually placed her feet up on one chair. Other than an occasional patron passing through, no one was nearby. D.J. or J.G. were not creating any sort of disturbance or annoyance. Certainly no one told them that they were.



**Officer Kevin Jones attacks J.G. without provocation**

19. After the youngsters spent about 20 minutes in the adult room, Officer Jones approached J.G. and D.J. in a hostile manner. Officer Jones started scolding J.G. to get her feet off of the chair. J.G. complied but Officer Jones continued yelling. J.G. asked Officer Jones what his concern was. He didn't respond; instead, Officer Jones motioned for her to leave and started to walk away. J.G. continued to sit on the chair, believing she had done nothing wrong. D.J. returned J.G.'s headphones (which she had given him so he could listen to a video on her phone), and she placed them on her neck as Officer Jones wandered behind the magazine stand directly in front of the half-circle of chairs where they sat.

20. As the siblings sat quietly, Officer Jones, came back over to them, stood above J.G. menacingly, and yelled at her to leave the library. J.G. explained that she would have to call her mom.



21. As he towered over her, Officer Jones again said J.G. had to leave the library. J.G. attempted to comply and stood up to leave. But Officer Jones was blocking her path, so she said,

"excuse me." Then, without provocation or justification, Officer Jones grabbed J.G. by the arm, placed his hand behind her neck, and began pushing her roughly towards the exit.

22.  When Officer Jones attacked her, J.G. was terrified. She did not know why this large man was hurting her. J.G. began to scream. In response, Officer Jones became even rougher. As they approached the front desk, Officer Jones pushed J.G. into a book cart and she tumbled to the ground. On the ground, he placed her arms behind her head in a full nelson,[1] hoisted her back to her feet, and dragged her towards the front door. J.G. continued to cry out in pain and terror.



23.  Officer Jones pushed J.G. through the exit's threshold and fell down on top of her, making no effort to avoid having his substantial body weight crash down on top of her. With her

---

[1] A full nelson is a wrestling maneuver where the aggressor encircles the arms from behind under the opponent's arms, locking them behind the opponent's neck. Due to the high risk of injury, this hold is banned in most forms of amateur wrestling. *See, e.g.*, NCAA Wrestling Rules and Interpretations (2015–16 and 2016–17), Rule 5.8.1 Illegal Holds: "Any hold shall be allowed except … [a] full nelson …" (http://www.ncaapublications.com/productdownloads/WR17.pdf) (last visited June 5, 2017).

arms pinned above her head, she was unable to break her fall. J.G. fell face first into the floor, breaking her jaw when Officer Jones landed on top of her. She screamed in agony.

24. Officer Jones then picked J.G. back up and dragged her outside where he left her writhing in pain on a concrete slab along the edge of the Library's front steps.

25. At no time during Officer Jones' interaction with J.G. was the use of force necessary or permissible under the circumstances.

26. During the whole interaction—from the time Officer Jones first grabbed J.G. until he deposited her on the front steps—J.G.'s younger brother D.J. (who was 11 at the time of the attack) watched helplessly. He walked behind Officer Jones as he grabbed, shoved, dragged, and crushed J.G. in the vestibule. D.J. then went back inside and to retrieve his sister's fallen phone.

27. Outside, Officer Jones continued to berate J.G. When backup arrived, J.G. was bleeding profusely from her mouth. Officer Jones stood over J.G., arms crossed, yelling "you should have just followed my directions. Stop being a smartass. What's your [mother's] phone number?" "I don't know, you slammed me as I was looking at it," J.G. responded.

28. D.J., visibly shaken, gave J.G. her phone so that she could read their mother's phone number to Officer Jones. Scared and confused, he hovered near his sister as she bled on the steps.

29. Officer Kohuth was the first police officer to approach J.G. after Officer Jones attacked her. Officer Kohuth saw that J.G. was bleeding from her mouth. It was clear that she was in need of medical attention. But Officer Kohuth did not call an ambulance or offer to provide first aid. Instead, he told her to spit her blood on to the grass instead of the concrete, and to move to a nearby bench. J.G. complied. Officer Kohuth walked back to his patrol car and left for another call without seeking medical attention for J.G.

30. Officers Crumley, Rebraca, and Smykowski were also responded to the scene after Officer Jones attacked J.G. Like Officer Kohuth, Officers Crumley, Rebraca, and Smykowski also failed to administer first-aid.

31. One of the officers instead questioned J.G. extensively as she cried in pain and spat out blood. Only after he finished his questions, as J.G. cried in pain about her jaw, did the officer ask "do you want an ambulance to come look at you?"

32. At no point did Officer Jones offer to give J.G. first aid. He hovered over her as she bled, then stood in front of her on the steps, re-hashing his attack on J.G. and laughing with the other officers about clocking out early rather than calling an ambulance to attend to the crying teenager.



33. As the officers laughed and joked about her, J.G. sat—holding her bleeding mouth—with her little brother. As captured in the still image from his body cam displayed below, rather than attending to J.G.'s medical needs, which his attack had caused, Officer Jones focused instead on rinsing the blood off of the concrete slab with a water bottle.



34. Almost 20 minutes after Officer Jones broke J.G.'s jaw, an ambulance finally appeared. Shortly after, the children's mother Sabrina Robinson arrived. Officer Jones told her that J.G. was "mouthing off," and that she "had to get up and go…[cause] when I say it's time to go, it's time to go."

35. J.G. was finally taken to Cleveland Clinic in Lakewood by ambulance. She was treated for a dislocated jaw, a head injury, and an injury to her knee. Doctors had to reset her jaw.

36. Since the attack, J.G. has been treated for severe depression and Post Traumatic Stress Disorder (PTSD). She often has nightmares of the attack and is afraid to return to the Library for fear of seeing Officer Jones.

37. D.J., too, has nightmares of the attack. He remains distraught that he was unable to protect his beloved sister J.G. from her attacker.

**Lakewood's investigation into Officer Jones' attack on J.G.**

38. On November 22, 2016, Lakewood Police Captain Hassing completed a review of Officer Jones' use of force against J.G. Captain Hassing reviewed police body-cams, library

security videos, photos, and Sgt. Fischer's write-up of the incident. Captain Hassing wrote a report to Lakewood Police Chief Timothy Malley.

39. In that report, Captain Hassing concluded that "based on [his] review of the incident P.O. Jones was in violation of policy and used force where it was not necessary or permitted based on the set of circumstances he faced."

40. Captain Hassing's accompanying letter to Chief Malley states that Officer Jones should have de-escalated the situation verbally and requested backup before laying hands on J.G., especially since she was not under arrest, nor told to stop resisting at any time during the incident:

> I concur with Sgt. Fischer, based on the Use of Force policy (300.3.2.) that P.O. Jones exceeded his authority when he placed hands on [J.G.]. That physical force was not warranted at the time. By going hands on, P.O. Jones escalated the situation where more force was needed in order to control [J.G.]. The immediate use of force to remove [J.G.] was not necessary based on the situation.

41. Captain Hassing recommended departmental charges against Officer Jones for violating Lakewood's Standard of Conduct, 320.5.9., "unreasonable and unwarranted force to a person encountered or under arrest," for attacking J.G. and placing her in a full-nelson hold; 320.5.1. "disobedience of…[a] legal directive" for failing to turn on his body-cam until after the confrontation with J.G. had begun; and 320.5.8., for "omitting material information to a supervisor," such as the extent of the force he used against J.G., and for "any act on/off duty that brings discredit to this department," by forcefully removing J.G. from the library in front of parents and small children.

42. The City failed to terminate Officer Jones or hold him accountable in any meaningful way for brutalizing a teenager in front of a child. The City of Lakewood continues to subject the public to the grave risk Officer Jones poses to children.

### Lakewood Police Department and the Library failed to train employees on how to respond to and interact with children

43. A review of Lakewood's training procedures reveals that the City failed to train officers in how to interact with children. The City failed to implement necessary and sufficient policies and procedures on how to conduct themselves in situations involving juveniles and, as a result, failed to protect children who come into contact with the police.

44. A well-trained officer would have recognized that a child bleeding from her mouth and crying in pain needs medical attention, and should not be subjected to an interrogation. None of the Lakewood officers at the scene assisted J.G. when they first arrived. A review of their training history reveals that other than training in "handcuffing juveniles," Lakewood police officers have received no training in the past ten years on policing with children, let alone in responding to their unique medical or other needs.

45. Lakewood Library also failed to train Officer Jones in his duties as a Library security officer, including regarding how to conduct himself in situations involving children. The Library's rules state that the police "will be called in to assist in the enforcement of these rules," not that an employee will unilaterally assault a juvenile patron for perceived rule violations such as minor noise transgressions. Had Officer Jones been properly trained, the risk he posed would have been ameliorated.

46. Lakewood police officers and Library staff regularly come into contact with children and teenagers. The Library has an entire room devoted to children's interests and seeks juvenile patrons. Yet both the City and the Library lacked policies on interacting with children, had no

training regarding such necessary policies, and had no practices to implement such necessary policies.

47. A well-trained employee would have known how to properly approach a child in a manner that did not grossly escalate the situation. Officer Jones instead approached J.G. and D.J. in a hostile and combative manner and attacked and brutalized her for no reason.

48. A well-trained employee would have known to administer first aid or call an ambulance upon witnessing a child bleeding profusely from her mouth. The individual Defendants instead failed to promptly attend to J.G.'s serious medical needs including a broken jaw, leaving her to suffer in agony while they joked around.

49. None of the other Library employees who had seen Officer Jones attack J.G. took any steps to protect her or secure medical attention for the injuries she suffered at his hands.

50. At the time of J.G.'s seizure, Defendant Jones did not have in his possession any warrant issued by any judge, court, or magistrate authorizing J.G.'s seizure. No such warrant had been issued. And there was no probable cause for his seizure; no Library patron or employee had even complained about J.G. or D.J. And the children complied with Officer Jones' instructions.

51. Officer Jones acted under color of law in his official capacity to deprive J.G. of her right to freedom from illegal seizure of her person and her right to freedom from excessive force. These rights are secured to her by the Fourth and Fourteenth Amendments and were clearly established as of November 7, 2016.

52. As a direct and proximate result of Defendant Jones' intentional and/or negligent acts, J.G. sustained severe mental and physical pain and suffering and injury in an amount to be determined at trial.

53. As a direct and proximate result of Defendants' intentional and/or negligent acts, J.G. sustained severe mental and physical pain and suffering and injury in an amount to be determined at trial.

54. J.G. is entitled to compensatory damages for the harms inflicted upon her. And she is entitled to punitive damages for the unconscionable conduct she was forced to endure at Defendants' hands.

55. As a direct and proximate result of Officer Jones' intentional and/or negligent acts, D.J. sustained severe mental and emotional pain and suffering and injury in an amount to be determined at trial.

56. D.J. is entitled to compensatory damages for the harms inflicted upon him by the mistreatment of his sister. And he is entitled to punitive damages for the unconscionable conduct he and his sister were forced to endure at Officer Jones' hands.

## CLAIM 1
### FOURTH AMENDMENT AND FOURTEENTH AMENDMENT VIOLATION UNDER 42 U.S.C. § 1983 AGAINST DEFENDANT JONES IN HIS PERSONAL CAPACITY FOR UNREASONABLE SEIZURE AND EXCESSIVE FORCE, ON BEHALF OF J.G.

51. Plaintiffs incorporate all previous allegations by reference.

52. Defendant Jones seized J.G. without probable cause and used excessive force to terrorize her. Defendant Jones' action led to physical and emotional damage to J.G.

53. As a direct and proximate result of Defendant Jones' unlawful conduct, J.G. suffered and will continue to suffer economic and non-economic damages for which Defendant Jones is liable, including, but not limited to, mental, emotional, and physical pain and suffering.

54. J.G. is entitled to punitive damages based on Defendant Jones' egregious conduct.

55. In addition to J.G.'s compensatory and punitive damages, the Defendant is also liable for attorneys' fees and costs, witness fees, expert fees, and any additional legal or equitable relief that this Court deems appropriate.

### CLAIM 2
### FOURTEENTH AMENDMENT VIOLATION UNDER 42 U.S.C. § 1983 AGAINST DEFENDANTS CRUMLEY, KOHUTH, REBRACA, AND SMYKOWSKI IN THEIR OFFICIAL AND PERSONAL CAPACITIES FOR DELIBERATE INDIFFERENCE TO A SERIOUS MEDICAL NEED, ON BEHALF OF J.G.

56. Plaintiffs incorporate all previous allegations by reference.

57. Defendants Crumley, Kohuth, Rebraca, and Smykowski failed to administer aid or respond to J.G.'s serious medical needs. Instead, they watched as J.G. cried in pain and called an ambulance only after they had finished interrogating her. This failure by Defendants led to physical and emotional damage to J.G.

58. As a direct and proximate result of the Defendants' unlawful conduct, J.G. suffered and will continue to suffer economic and non-economic damages for which the Defendants are liable, including, but not limited to, mental, emotional, and physical pain and suffering.

59. J.G. is entitled to punitive damages based on Defendants' egregious conduct.

60. In addition to J.G.'s compensatory and punitive damages, Defendants are also liable for attorneys' fees and costs, witness fees, expert fees, and any additional legal or equitable relief that this Court deems appropriate.

### CLAIM 3
### FOURTH AND FOURTEENTH AMENDMENT VIOLATION UNDER 42 U.S.C. § 1983 AGAINST DEFENDANT CITY OF LAKEWOOD FOR DELIBERATE INDIFFERENCE/FAILURE TO TRAIN POLICE OFFICERS ON HOW TO INTERACT WITH CHILDREN AND RESPOND TO A SERIOUS MEDICAL CONDITIONS, ON BEHALF OF J.G.

61. Plaintiffs incorporate all previous allegations by reference.

62. Defendant City, through the Police Department, and acting under the pretense and color of law, created, permitted, tolerated, and was deliberately indifferent to a pattern and practice of

deliberate indifference to training officers on how to interact with children and to properly respond to a serious medical condition. This widespread denial of training for a foreseeable population that will interact with police officers and for a situation they will likely confront often constitutes a municipal policy, practice, or custom and led to J.G.'s assault.

63. By permitting, tolerating, and sanctioning a persistent and widespread policy, practice, and custom under which J.G. was attacked, Defendant City deprived J.G. of rights, remedies, privileges, and immunities guaranteed to every citizen of the United States, secured by 42 U.S.C. § 1983, including, but not limited to, the right to interact with police officers without deliberate indifference to her age and medical needs.

64. As a direct and proximate result of Defendant City's unlawful conduct, J.G. suffered and will continue to suffer economic and non-economic damages for which this Defendant is liable, including, but not limited to, mental, emotional, and physical pain and suffering.

## CLAIM 4
### FOURTH AND FOURTEENTH AMENDMENT VIOLATION UNDER 42 U.S.C. § 1983 AGAINST DEFENDANT LAKEWOOD PUBLIC LIBRARY FOR DELIBERATE INDIFFERENCE/FAILURE TO TRAIN EMPLOYEES ON HOW TO INTERACT WITH CHILDREN AND ENFORCE LIBRARY RULES, ON BEHALF OF J.G.

65. Plaintiffs incorporate all previous allegations by reference.

66. Defendant Library acting under the pretense and color of law, created, permitted, tolerated, and was deliberately indifferent to a pattern and practice of deliberate indifference to training employees on how to interact with children, enforce library rules, and properly respond to a serious medical condition. This widespread denial of training for a foreseeable population that will interact with employees and for a situation they will likely confront often constitutes a policy, practice, or custom and that led to J.G.'s assault.

67. By permitting, tolerating, and sanctioning a persistent and widespread policy, practice, and custom under which J.G. was attacked, Defendant Library deprived J.G. of rights, remedies,

privileges, and immunities guaranteed to every citizen of the United States, secured by 42 U.S.C. § 1983, including, but not limited to, the right to interact with Library employees without deliberate indifference to her age and medical needs.

68. As a direct and proximate result of Defendant Library's unlawful conduct, J.G. suffered and will continue to suffer economic and non-economic damages for which this Defendant is liable, including, but not limited to, mental, emotional, and physical pain and suffering.

## CLAIM 5
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AGAINST DEFENDANT JONES, ON BEHALF OF J.G. AND D.J.

69. Plaintiffs incorporate all previous allegations by reference.

70. In conducting himself as he did, Defendant Jones either intended to cause emotional distress or knew or should have known that the actions taken would result in serious emotional distress to J.G. and D.J.

71. Defendant Jones' conduct in attacking and detaining a child in a public library for no reason was extreme and outrageous. It went beyond all possible bounds of human decency and was such that it could be considered intolerable in civilized society.

72. As a direct and proximate result of Defendant Jones' unlawful conduct, J.G. and D.J. have suffered and will continue to suffer mental anguish so serious and of such a nature that no reasonable person could be expected to endure it and for which Defendant Jones is liable.

73. J.G. and D.J. are entitled to punitive damages based on Defendant Jones' egregious conduct.

## CLAIM 6
### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS AGAINST DEFENDANT JONES, ON BEHALF OF J.G. AND D.J.

74. Plaintiffs incorporate all previous allegations by reference.

75. J.G. was subjected to physical peril at the hands of Defendant Jones, and her brother D.J. was placed in the zone of danger next to J.G. As a direct and proximate result of Defendant Jones' unlawful conduct, J.G. and D.J. have suffered and will continue to suffer serious mental anguish for which Defendant Jones is liable.

## CLAIM 7
### BATTERY AGAINST DEFENDANT JONES, ON BEHALF OF J.G.

76. Plaintiffs incorporate the previous allegations by reference.

77. Defendant Jones engaged in the above-described actions intending to cause the harmful contact and the harmful contact resulted. Defendant Jones intended to throw J.G. out of the Library, dragging her across the room, shoving her against a book cart, placing her in a headlock or full-nelson hold, and using his body weight to push her outside. These offensive contacts were unlawful and unwanted.

78. As a direct and proximate result of Defendant Jones' unlawful conduct, J.G. suffered and will continue to suffer economic and non-economic damages for which Defendant Jones is liable, including, but not limited to, mental, emotional, and physical pain and suffering.

79. J.G. is entitled to punitive damages based on Defendant Jones' egregious conduct.

## CLAIM 8
### CIVIL LIABILITY FOR CRIMINAL ACTS UNDER OHIO REV. CODE § 2307.60(A)(1) AGAINST DEFENDANT JONES, ON BEHALF OF J.G. AND D.J.

80. Plaintiffs incorporate the previous allegations by reference.

81. The conduct complained of above constitutes criminal acts on the part of Defendant Jones. These crimes include, but are not limited to,

   a. assault (Ohio Rev. Code § 2903.13(A));

   b. menacing (Ohio Rev. Code § 2903.22(A));

      c. abduction (Ohio Rev. Code § 2905.02(A)(2));

      d. unlawful restraint (Ohio Rev. Code § 2905.03(A));

      e. disorderly conduct (Ohio Rev. Code §§ 2917.11(A)(1), (A)(2), and (A)(5)); and

      f. interfering with civil rights (Ohio Rev. Code § 2921.45(A)).

82. As a direct and proximate result of Defendant Jones' criminal conduct, which showed a spirit of ill-will, hatred, and wanton disregard of J.G.'s rights, J.G. and D.J. suffered and will continue to suffer economic and non-economic damages for which Defendant Jones is liable, including but not limited to mental, emotional, and physical pain and suffering, as well as punitive damages.

**PRAYER FOR RELIEF**

For the reasons stated above, J.G. and D.J. respectfully request the following relief from the Court:

    A. Declare that Defendants' acts and conduct constitute violations of the Fourth and Fourteenth Amendments to the United States Constitution, as well as of 42 U.S.C. § 1983;

    B. Enter judgment in J.G. and D.J.'s favor on all claims for relief;

    C. Award full compensatory damages including, but not limited to, damages for pain and suffering, mental anguish, emotional distress, humiliation, embarrassment, and inconvenience that J.G. and D.J. have suffered and are reasonably certain to suffer in the future;

    D. Award punitive and exemplary damages for the individual Defendants' egregious, willful, and malicious conduct;

    E. Award pre- and post-judgment interest at the highest lawful rate;

F.  Award J.G. and D.J. their reasonable attorneys' fees (including expert fees) and all other costs of suit;

G.  Award all other relief in law or equity, including injunctive relief, to which J.G. and D.J. are entitled and that the Court deems equitable, just, or proper.

### JURY DEMAND

J.G. and D.J. demand a trial by jury on all issues within this Complaint.

Respectfully submitted,

*/s/ Subodh Chandra*
Subodh Chandra (0069233)
Ashlie Case Sletvold (0079477)
Marvin C. Brown IV (0096128)
THE CHANDRA LAW FIRM LLC
The Chandra Law Building
1265 W. 6th St., Suite 400
Cleveland, OH 44113-1326
216.578.1700 Phone
216.578.1800 Fax
Subodh.Chandra@ChandraLaw.com
Ashlie.Sletvold@ChandraLaw.com
Marvin.Brown@ChandraLaw.com

*Attorneys for Plaintiffs*