### Declaration of Ashlie Case Sletvold

I, Ashlie Case Sletvold, respectfully declare as follows based upon personal knowledge:

1. I submit this declaration in support of Plaintiffs' fee petition in *J.G., et al. v Jones, et al.*, N.D. Ohio Case No. 1:17-cv-1171.

2. I am a partner at the boutique litigation firm the Chandra Law Firm LLC, The Chandra Law Building, 1265 W. 6th Street, Suite 400, in Cleveland, Ohio. Among our principal practice areas is complex civil-rights litigation. Although we are primarily focused on plaintiffs' work now, we also do a fair amount of defense work. We do our work both on a fee-shifting basis and for hourly fee-paying clients, charging the same rates for all types of matters.

3. I have been with the firm since November 2010, previously as an associate. I have been a partner since 2014. My résumé is attached as Exhibit 1A.

4. I graduated from the University of Akron in 2002, *summa cum laude*, with a degree in philosophy. I received my J.D. from the Yale Law School in 2005, where I was fortunate to study under former U.S. Assistant Attorney General for Civil Rights and former Solicitor General Drew S. Days, III and noted constitutional scholar Akhil Reed Amar. At Yale, I served as articles editor for the *Yale Journal of Law & Feminism* and as an editor for the *Yale Journal on Regulation*. I am the author of *Conflicting Feminisms and the Rights of Women Inmates*, which is available at 17 YALE J. OF LAW & FEMINISM 309 (2005). I also participated in the Complex Federal Litigation Clinic representing inmates at the Federal Correctional Institution in Danbury, CT in civil-rights matters involving denial of adequate medical care and sexual assault by prison guards.

5. During the summer of 2003, I was a summer associate at Squire, Sanders & Dempsey, now Squire Patton Boggs, in Cleveland, Ohio. During the summer of 2004, I was a summer associate at Jones Day in Cleveland, Ohio. During both summers, I focused primarily on litigation matters in a variety of areas of law.

6. From 2005 until 2010, I was a litigation associate in the Cleveland office of Jones Day, where I had trial and appellate experience in state and federal courts. And I completed substantial pro bono work on behalf of indigent clients in civil and criminal matters in trial and appellate courts, including civil-rights matters. I tried a number of product-liability matters as second- and third-chair trial counsel for a large cigarette manufacturer. I also litigated medical-device-liability and employment matters.

7. During my years at Jones Day, I am aware that clients were billed between $200 and $300 hourly for my time, increasing with my seniority. Jones Day was charging paying clients $300 hourly for my time as a fifth-year associate in 2010. To the best of my knowledge, the rates Jones Day charged paying clients for my time were reasonable and commensurate with what the firm was charging paying clients for other associates' time in the Cleveland, Columbus, and Pittsburgh offices. I have no reason to believe that the firm charged higher rates for my time than for my contemporaries' time.



8. I am admitted to practice in Ohio (2005), Florida (2009), and Colorado (2010) as well as in the Northern District of Ohio, the Southern District of Ohio, the Second Circuit Court of Appeals, the Sixth Circuit Court of Appeals, and the Ninth Circuit Court of Appeals. I am currently inactive in Colorado.

9. During my time at the Chandra Law Firm, I have focused primarily on civil-rights work in fee-shifting matters including complex § 1983 and constitutional-law matters.[1] In addition to this civil-rights work, I have handled other general litigation matters and many public-records matters.[2] My trial experience includes first-chair experience. In addition to the representative matters listed below, I have handled dozens of other matters that have settled in pre-suit negotiations including excessive-force and other civil-rights matters.

10. I am a barrister in the William K. Thomas American Inn of Court. I am entering my third year as a member of the Inn's executive committee and my second as its treasurer. I have presented on public-records issues in continuing-education seminars and as a guest lecturer at Kent State University. I have been recognized as an Ohio *SuperLawyers*® Rising Star each year since 2016.

11. When I joined the firm in 2010, the firm generally charged $300 per hour for my time, consistent with my hourly rate at Jones Day. That hourly rate has increased over the past eight years: to $330 in 2011, to $350 in 2012–13, to $360 in 2014–15, to $375 in 2016–17, and to $400 in 2018. The invoices attached as Exhibit 2C to the Declaration of Suzanne Zaranko (our firm's office manager) reflect those hourly rates paid by hourly clients for work I and other firm personnel performed in various civil-rights and employment matters from 2014–18.

---

[1] *Huggins v. City of Cleveland, et al.*, Case No. 1:12-cv-02588 (N.D. Ohio) (sexual and racial harassment and wrongful termination); *Klingeman v. DeChristofaro, et al.*, Case No. 4:09-cv-528 (N.D. Ohio) (First Amendment wrongful termination and retaliation); *Matheny v. City of Norton, et al.*, Case No. 5:12-cv-01697 (N.D. Ohio) (religious discrimination and wrongful termination); *Faiman v. United Airlines*, 1:12-cv-1878 (bodily injury on airline under Warsaw Convention); *Northeast Ohio Coalition for the Homeless, et al. v. Husted*, 2:06-cv-896 (S.D. Ohio) (provisional-ballot litigation); *Ortiz v. Kazimer, et al.*, Case No. 1:11-cv-01521 (N.D. Ohio) (police excessive force); *Ortiz v. City of Cleveland*, Case No. 1:16-cv-2529 (N.D. Ohio) (police excessive force); *Phelps v. City of Berea, et al.*, Case No. 1:11-cv-2374 (N.D. Ohio) (racial discrimination and retaliation in failure to promote); *SEIU, Local 1 v. Husted*, Case No. 2:12-cv-562 (S.D. Ohio) (provisional-ballot litigation); *Williams v. Cleveland Clinic*, Case No. 1:15-cv-2496 (N.D. Ohio) (ADA/deaf-interpretation services); *DeCrane v. Eckart*, Case No. 1:16-cv-2647 (N.D. Ohio) (First Amendment retaliation); *Kesterson v. Kent State Univ., et al.*, Case No. _5:16-cv-298 (Title IX/constitutional violations); *Evans v. Ohio Lottery Commission*, Case No. 1:15-cv-164 (N.D. Ohio) (race discrimination and retaliation).

[2] *Popa v. BSE*, Case No. CV-14-828217 (Cuyahoga C.P.) (noncompete litigation); *BSE v. Strachan-Novak Insurance Services, LLC*, Case No. CV-16-867759 (Cuyahoga C.P.) (unfair competition/trade secrets); *Davila v. DeChristofaro*, Case No. 2011 CV 372 (Trumbull County C.P.) (removal of county engineer from office); *Ku v. Mitchell, et al.*, Case No. CV-13-815935 (Cuyahoga County C.P.) (retaliation for opposing discrimination); *Barcklay v. Head Mercantile Group*, Case No. CV-14-829928 (Cuyahoga C.P.) (sexual harassment and retaliation); *State ex rel. Kesterson v. Kent State University*, Case Nos. 2016-615 and 2016-1123 (Ohio Supreme Court) (public-records violations); *State ex rel. Evans v. Ohio Lottery Commission*, Case No. 2014-172 (Ohio Supreme Court) (public-records violations).

12. Our rates have increased over time in large part because the demand for our services is great and to adjust for inflation and increased operating costs; we are highly selective and respectfully decline over 99% of clients seeking our services.

13. I am aware from my professional experience about the market rates that are customarily charged for work of this sort, and the rates our firm charges are reasonable.

14. I have considered Ohio Professional Conduct Rule 1.5 and believe the rates we charge our clients and seek in this matter are consistent with the factors set forth there, in particular

    a. the time and labor required;
    b. the novelty and difficulty of the questions involved;
    c. the skill requisite to perform the legal service properly;
    d. the results obtained for the clients;
    e. the likelihood that the work will preclude other work by the attorneys, which by definition means time not spent on other, hourly fee-paying matters at the same rates;
    f. the nature and length of the professional relationship with the client (which was one-time contingency litigation with no guarantee of payment and greater risk imposed upon the plaintiffs' counsel, in a matter extending over a year and a half;
    g. the experience, reputation, and ability of the lawyers performing the services.

15. The United States District Court for the Southern District of Ohio approved, and the United States Court of Appeals for the Sixth Circuit affirmed, an hourly rate for me of $350 for work performed in 2012. *See Northeast Ohio Coalition for the Homeless v. Husted*, No. 06-cv-896, 2014 U.S. Dist. LEXIS 137320, at *50 (S.D. Ohio Sept. 29, 2014) (Marbley, J.), *aff'd*, 831 F.3d 686, 692, 718–19 (6th Cir. 2016).

16. I am familiar with the work performed by my firm's attorneys and support staff in litigating this matter. My partner, Subodh Chandra, and I supervised this work. Our firm's contemporaneous billing records, kept in the ordinary course of business, are attached as Exhibit 1B. This invoice covers the time period from when we began the representation through July 31, 2018. Exhibit 1B *does not* include time spent preparing this fee submission. As detailed below, that time was tracked separately and is contained in a separate invoice included with this declaration.

17. As set forth in Exhibit 1B, attorneys from my firm recorded 195.5 hours total working on the case through July 31, 2018. Law clerks spent 18.7 hours during that same time period. I personally reviewed all time entries for time devoted to this matter. Exhibit 2A to Ms. Zaranko's declaration is a breakdown of the time spent per individual. As set forth in Exhibit 1B, our firm spent 57.5 hours investigating, exploring pre-suit resolution, and preparing the complaint; 156.5 hours collecting records Defendants requested, preparing the mediation statement and exhibits, preparing our clients for mediation, and attending the mediation; and following mediation, 58.8 hours on discovery and resolution efforts though the date of the judgment entry. These totals do not include time spent preparing the fee petition, which is detailed in Exhibit 1D below.

18. As indicated in Exhibit 1B, we tasked associate attorney Marvin C. Brown IV with substantial portions of the work including spending time obtaining public records from the City and the Library (including videos showing the attack that resulted in injuries to J.G.), drafting the complaint, preparing the mediation statement, and drafting written discovery to propound on the defendants. Mr. Brown was assigned these projects to ensure that the work was being performed by the attorney with the lowest billing rate who was competent to perform it. I did not record all time spent conferring with him or with Mr. Chandra or with our clients regarding the matter.

19. In the exercise of billing discretion, I have removed 70.1 hours of attorney time and 18.7 hours of law-clerk time, leaving 125.4 attorney hours for which we are seeking reimbursement. The discretionary attorney-hours deductions include hours involved in negotiations with counsel for the Library to reach a separate settlement on J.G.'s failure-to-train claims (7.1 hours);[3] time spent researching the collateral effect of settlement with the Library on an eventual trial with the remaining defendants (7.6 hours);[4] time spent litigating regarding the individual defendants who were dismissed by stipulation (4.1 hours);[5] time spent substituting associate attorney Patrick Haney when Mr. Brown left the firm (.3 hours);[6] and for certain time spent complying with Ohio Medicaid requirements regarding expenditures on J.G.'s behalf (1.2 hours).[7] I have also discounted an additional

---

[3] Ex. 1B (see discounted entries for A. Sletvold (Dec. 20, 2017) (.6); S. Chandra (Dec. 20, 2017) (.2); S. Chandra (Jan. 15, 2018) (1.2); S. Chandra (Jan. 25, 2018) (.2); S. Chandra (Jan. 31, 2018) (.1); S. Chandra (Feb. 1, 2018) (.3); A. Sletvold (Feb. 1, 2018) (.2); S. Chandra (Feb. 6, 2018) (.2); A. Sletvold (Feb. 17, 2018) (.9); D. Screen (Feb. 23, 2018) (.2); A. Sletvold (Mar. 1, 2018) (1.3); S. Chandra (Mar. 13, 2018) (.4); S. Chandra (Apr. 18, 2018) (.4); S. Chandra (May 24, 2018) (.1); S. Chandra (May 29, 2018) (.3); A. Sletvold (May 29, 2018) (.3); and S. Chandra (June 26, 2018) (.2)).

[4] *Id.* (see discounted entries for D. Screen (Dec. 29, 2017) (.6); D. Screen (Jan. 1, 2018 (.4); D. Screen (Jan. 4, 2018) (3.7); D. Screen (Jan. 10, 2018) (2.9)).

[5] *Id.* (see discounted entries for A. Sletvold (Feb. 7, 2018) (.1); S. Chandra (Feb. 20, 2018) (.3); M. Brown (Feb. 20, 2018) (.3); M. Brown (Feb. 21, 2018) (1.0); D. Screen (Feb. 21, 2018) (.7); S. Chandra (Feb. 21, 2018) (.7); S. Chandra (Feb. 22, 2018) (.2); M. Brown (Feb. 23, 2018) (.5); and M. Brown (Mar. 2, 2018) (.3)).

[6] *Id.* (see discounted time entry for P. Haney (May 29, 2018) (.3)).

[7] *Id.* (see discounted time entries for A. Sletvold (June 23, 2017) (.7) and M. Brown (Mar. 16, 2018) (.5)).

19. 49.7 hours of attorney time[8] and 18.7 hours of law-clerk time[9] in the exercise of billing discretion. In total, I voluntarily discounted 70.1 hours (~36%) of the attorney time actually invested. We are also not currently seeking reimbursement for time spent to execute on the judgment or preparing the necessary filings with the local probate court to approve payment of the judgment to D.J. (currently age 13), which is required to disburse funds to minors.

20. Our firm customarily charges clients for out-of-pocket advanced costs such as copies, process-service fees, postage, court-reporter fees, travel-expenses, and computer-assisted online-research services like Westlaw and Lexis. Attached as Exhibit 1C is a breakdown of costs and expenses our firm advanced on Plaintiffs' behalf in this case through July 31, 2018, also recorded in our billing system in the ordinary course of business. All of the identified tasks and costs in both exhibits were factually related to, and reasonably calculated to, achieve the success that our clients have enjoyed in this matter. I personally reviewed all expenses our firm advanced on Plaintiffs' behalf to litigate the case.

21. After Officer Jones attacked J.G. on November 7, 2016, Plaintiffs retained our firm and we conducted an appropriate fact investigation. That investigation included requesting numerous public records from the City and the Library, and specifically the videos showing the unprovoked attack by Defendant Jones that dislocated J.G.'s jaw. Our early efforts to resolve the case were not reciprocated. Once we filed the complaint and the defense agreed to mediate, the defense insisted on receiving access to all of J.G. and D.J.'s historical medical and educational records, which we collected. MetroHealth was not responsive to our requests to provide all of this information. I finally had Mr. Brown personally go to MetroHealth to obtain complete sets of our clients' records. After mediation was unsuccessful, our office prepared interrogatories, production requests, and requests for admission to each of the defendants, which we served on January 24, 2018. The parties exchanged initial disclosures on February 12, 2018. At defense counsel's request, we agreed to dismiss the individual defendants accused of failing to render aid provided they responded to the outstanding discovery requests. Defendants (excepting the

---

[8] *Id.* (see discounted time entries for A. Sletvold (Nov. 30, 2016) (.1); M. Brown (Dec. 2, 2016) (2.0); M. Brown (Dec. 23, 2016) (2.0); S. Chandra (Jan. 6, 2017) (.1); M. Brown (Jan. 9, 2017) (1.3); S. Chandra (Jan. 24, 2017) (.1); M. Brown (Mar. 2, 2017) (.6); M. Brown (Mar. 8, 2017) (1.6); A. Sletvold (Mar. 21, 2017) (.2); M. Brown (Mar. 23, 2017) (.5); M. Brown (Mar. 29, 2017) (.1); M. Brown (Apr. 3, 2017) (1.2); A. Sletvold (Apr. 17, 2017) (.1); M. Brown (May 23, 2017) (2.5); A. Sletvold (May 25, 2017) (.1); S. Chandra (May 25, 2017) (.5); A. Sletvold (May 30, 2017) (.1); M. Brown (June 1, 2017) (2.0); S. Chandra (June 5, 217) (2.8); M. Brown (June 5, 2017) (2.9); A. Sletvold (June 7, 2017) (.2); S. Chandra (June 14, 2017) (.1); P. Haney (June 14, 2017) (.2); S. Chandra (July 11, 2017) (.3); A. Sletvold (July 17, 2017) (.1); A. Sletvold (July 19, 2017) (.2); A. Sletvold (July 27, 2017) (.2); S. Chandra (July 29, 2017) (.1); M. Brown (Aug. 1, 2017) (.2); M. Brown (Sept. 6, 2017) (1.0); A. Sletvold (Sept. 6, 2017) (1.8); S. Chandra (Sept. 28, 2017) (.1); S. Chandra (Sept. 29, 2017) (.1); M. Brown (Oct. 25, 2017) (2.3); A. Sletvold (Nov. 28, 2017) (.9); M. Brown (Nov. 28, 2017) (6.5); M. Brown (Nov. 29, 2017) (3.5); A. Sletvold (Nov. 30, 2017) (2.7); M. Brown (Nov. 30, 2017) (1.6); M. Brown (Dec. 12, 2017) (4.7); S. Chandra (May 8, 2018) (.2)); S. Chandra (May 9, 2018) (.4); A. Sletvold July 24, 2018 (1.2); and A. Sletvold (July 30, 2018) (.3).

[9] *Id.* (see discounted time entries for T. Robinson (June 7, 2017) (.8); T. Robinson (June 13, 2017) (3.5); T. Robinson (June 15, 2017) (1.2); T. Robinson (June 16, 2017) (3.5); B. Bardwell (June 23, 2017) (.3); T. Lindeman (Apr. 4, 2018) (3.5); T. Lindeman (May 2, 2018) (.8); T. Lindeman (May 3, 2018) (.6); T. Lindeman (May 7, 2018) (1.0); and T. Lindeman (May 9, 2018) (3.5)).

<blockquote>Library) submitted responses to our discovery requests in February and March. Jones served written discovery on J.G. and D.J. on April 11, 2018. J.G. settled her failure-to-train claim against the Library for $50,000. On May 3, 2018, Jones and the City made a Rule 68 offer of judgment for $100,000, with the Court to determine fees and expenses. Before that offer expired, the City served written discovery on J.G. and D.J. on May 11, 2018. We responded to Jones's admission requests on May 31, 2018. I was finalizing Plaintiffs' responses to the remaining discovery from Jones and the City's discovery when settlement discussions resumed that culminated in the $150,000 offer of judgment from the City and Jones, again with the Court to determine fees and expenses, on July 23, 2018. Our clients accepted the second offer of judgment on July 24, 2018, and I sent and filed the appropriate documents to memorialize the agreed judgment. The Court entered the agreed judgment on August 3, 2018 and set the deadline to submit the fees motion.</blockquote>

22. I had primary responsibility for preparing the fee petition including my detailed review of all time entries, exercising discretion in terms of time to waive, conducting research, and drafting the motion and supporting declarations. My work also included obtaining declarations from practitioners Avery Friedman, W. Craig Bashein, Terry Gilbert, and Christopher P. Thorman regarding the reasonableness of time spent litigating this case, the expenses advanced, and our hourly rates. Our firm's contemporaneous billing records regarding the time invested in preparing this fee petition, kept in the ordinary course of business, are attached as Exhibit 1D. This invoice covers the time period from when we began preparing the fee petition on July 26, 2018 through August 21, 2018.

23. As set forth in Exhibit 1E, my firm recorded 20.4 hours total working on the fee petition through August 21, 2018. I personally reviewed all time entries for time devoted to this matter. In the exercise of billing discretion, I waived time spent by my firm colleagues (2.1 hours) and our law clerks (1.7 hours) on this project. We seek reimbursement for the 16.6 hours I spent on this work, or a total of $6,640.

24. I document my time contemporaneously each day by using the timer function in our billing software (Clio). I am judicious about this practice. Though I sometimes, in the exercise of billing discretion, opt not to record time on a date when my work on a matter is limited to internal discussions or a short phone call or email.

25. Attached as Exhibit 1E are copies of records Defendant City of Lakewood provided in response to our discovery requests: City of Lakewood Use of Force Report from Sgt. Fischer to Lt. Wilkins (Nov. 16, 2016) LAKEWOOD DISCOVERY 00235–39; City of Lakewood Use of Force Report from Capt. Hassing to Chief O'Malley (Nov. 22, 2016) LAKEWOOD DISCOVERY 00232–34; Charging Letter from Capt. Hassing to P.O. Jones (Nov. 28, 2016) LAKEWOOD DISCOVERY 00244–45; and Letter from Chief O'Malley regarding Departmental Charges against P.O. Jones (Dec. 19. 2016) LAKEWOOD DISCOVERY 00246–47.

26. I am acquainted with Jacqueline Greene and Sara Gelsomino of Friedman and Gilbert. Ms. Greene is a 2011 admittee and Ms. Gelsomino is a 2008 admittee.

I declare the above to be true under penalty of perjury of the laws of the United States of America.

Dated: August 22, 2018

Ashlie Case Sletvold